OPINION
{¶ 1} The appellants, Ronald and Janet Young, appeal the November 12, 2002 judgment of the Court of Common Pleas of Hancock County, Ohio, asserting as error the granting of summary judgment in favor of the appellee, Federal Insurance Company ("Federal"), on August 12, 2002, and the co-appellee, Great Northern Insurance Company ("Great Northern"), on September 30, 2002.
 {¶ 2} The events leading to this appeal are as follows. On May 21, 1999, Ronald Young sustained serious injuries while riding his privately owned motorcycle when he was struck by an automobile driven by Joshua Plageman. On December 3, 1999, Young and his wife, Janet (hereinafter "the Youngs"), filed a complaint in the Hancock County Court of Common Pleas against Plageman and three individual insurance companies. The complaint was later amended to include four other insurance companies as defendants, including the appellees herein, Federal and Great Northern. As to these defendants, the complaint requested a judicial declaration of the Youngs' right to underinsured motorist coverage.
 {¶ 3} The Youngs' claims against Federal and Great Northern arose as follows: Janet Young was employed by Fifth Third Bank of Northwestern Ohio, N.A. ("Fifth/Third") at the time of her husband's accident. During this time, there was in effect a business auto policy, including uninsured/underinsured motorists ("UM/UIM") coverage, issued to Fifth/Third by Federal and a comprehensive general liability policy for financial institutions, without UM/UIM coverage, issued to Fifth/Third by Great Northern. Pursuant to the Ohio Supreme Court's decision in 1999,Scott-Pontzer v. Liberty Mut. Ins. Co. (1999), 85 Ohio St.3d 660, the Youngs claimed that they were entitled to UIM coverage under the policies issued to Janet Young's employer, Fifth/Third, by Federal and Great Northern.
 {¶ 4} The Youngs eventually settled their claims with Plageman for $100,000, the limit of his personal automobile policy. However, Federal and Great Northern both denied coverage. On December 19, 2000, the Youngs filed a motion for summary judgment against Federal and Great Northern. Federal and Great Northern responded to this motion on January 8, 2001, and also filed cross-motions for summary judgment against the Youngs. Originally, the trial court granted summary judgment in favor of Federal but overruled Great Northern's motion for summary judgment on August 12, 2002. Great Northern then filed a motion for reconsideration as to summary judgment, which the court granted and found in favor of Great Northern on September 30, 2002. The remaining parties to the litigation later settled with the Youngs, and the case was dismissed with the consent of these parties on November 12, 2002. This appeal followed, and the Youngs now assert two assignments of error as to the August 12, 2002, and September 30, 2002 judgments of the trial court.
 The trial court's denial of Appellants' summary judgment motion and corresponding grant of summary judgment to Appellee Federal Insurance Company ("Federal") was in error since Appellants are entitled to underinsured motorist ("UIM") coverage under the Federal business auto policy issued to Appellant Janet Young's employer, Fifth Third Bank of Northwestern Ohio N.A.
 The trial court's denial of Appellants' summary judgment motion and corresponding grant of summary judgment to Appellee Great Northern Insurance Company ("Great Northern") was in error since Appellants are entitled to UIM coverage under the Great Northern general liability policy issued to Appellant Janet Young's employer, Fifth Third Bank of Northwestern Ohio N.A.
 {¶ 5} Both assignments of error pertain to whether the trial court erred in granting summary judgment. Thus, this Court begins its analysis of these issues by noting that the standard for review of a grant of summary judgment is one of de novo review. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 7} In the case sub judice, the parties do not dispute the relevant facts. Their controversy concerns the interpretation of the respective policies and whether they afford coverage to the Youngs given this set of facts. Thus, this Court need only determine whether either or both relevant polices entitle the Youngs to coverage as a matter of law pursuant to Scott-Pontzer and its progeny.
 First Assignment of Error: The Federal Policy {¶ 8} The Youngs first assert that the trial court relied upon an exclusion in the Federal policy, which they claim does not apply to them, to preclude UIM coverage for Ronald Young's accident. The Federal policy provides UIM coverage up to $500,000. In defining who is an insured, the policy lists, in relevant part, the following: "1. You. 2. If you are an individual, any `family member'." "You" is defined in the policy as the "Named Insured shown in the Declarations." A "family member" is defined in the policy as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." However, the Federal policy also states: "This insurance does not apply to: * * * 5. `Bodily Injury' sustained by: * * * b. Any `family member' while `occupying' * * * any vehicle owned by that `family member' that is not a covered `auto' for Uninsured Motorist Coverage under this Coverage Form[.]" This language in a policy is also known as an "other-owned vehicle" exclusion. Furthermore, according to the Federal policy, a "covered auto" for uninsured motorist coverage includes only those autos listed in the declaration and for which a premium is paid. The listed autos, while numerous, do not include any motorcycles, the type of vehicle Ronald Young was occupying at the time of his accident.
 {¶ 9} The Youngs assert, and Federal concedes, that Janet Young qualifies as an insured because of the use of the term "you" in defining who is an insured and that Ronald Young is, likewise, an insured as a "family member" of Janet. However, the Youngs further contend that the term "family member," as used in the other- owned vehicle exclusion when defined as the "Named Insured shown in the Declarations," does not include Ronald Young since he is not listed in the policy by name or title as a "named insured."
 {¶ 10} The well-settled law of Ohio is that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Buckeye Union Ins. Co. v. Price (1974), 39 Ohio St.2d 95, syllabus. However, where no ambiguity exists, the words of a policy must be given their plain and ordinary meaning. Burris v. Grange Mut. Co.
(1989), 46 Ohio St.3d 84, 89.
 {¶ 11} In Scott-Pontzer, the commercial insurance coverage policy in dispute was issued to a corporation, Superior Dairy, Inc., by Liberty Mutual Fire Insurance Company. Scott-Pontzer, 85 Ohio St.3d at 661. The plaintiff asserted a right to UM/UIM coverage under this policy after her husband, an employee of Superior Dairy, died in an automobile accident.Id. The policy defined the insured as "you" and "if you are an individual, any `family member[,]'" much like the policy at issue in the case sub judice. Id. at 663. The term "you" was defined as "the named insured shown in the declarations." Id. The Ohio Supreme Court found the term "you" to be ambiguous based on the fact that the named insured was a corporation. Id. at 664. The Court determined that when the only named insured is a corporation, coverage is not limited solely to the corporate entity, but rather, is extended to the employees of the corporation "since a corporation can act only by and through real live persons." Id. Therefore, having determined that the policy language was ambiguous, the court "construed [the language] most favorably to the insured" and found that the plaintiff's husband was an insured under his employer's policy.Id. at 665. This coverage was later extended to include family members of the corporation's employees. See Ezawa v. Yasuda Fire Marine Ins.Co. (1999), 86 Ohio St.3d 557, 558.
 {¶ 12} Believing that the Scott-Pontzer decision declared an inherent ambiguity in the use of terms, which must always be construed in their favor, the Youngs filed their claim for UIM coverage under the Federal policy pursuant to Scott-Pontzer and Ezawa. As previously stated, in order to preclude coverage, the Federal policy exclusion requires that the non-covered auto be owned by that "family member." The Youngs essentially argue that although it was necessary for Ronald to be included within the definition of "family member" in order to be eligible for any UIM coverage under the policy pursuant to Scott-Pontzer andEzawa, he should not be included within the definition of "family member" for purposes of the UIM exclusions. Specifically, the Youngs assert that since the term "you" has been judicially determined to be ambiguous by the Scott-Pontzer decision, it and the term "family member" must be construed to their benefit anywhere the terms appear in the Federal policy, even if to do so produces inconsistent definitions of "you" and "family member" within that policy. We disagree with the Youngs' contention and find that the sounder interpretation of the Federal policy and the Scott-Pontzer decision would be to apply those terms consistently throughout the policy. See Niese v. Maag, 3rd Dist. No. 12-02-06,2002-Ohio-6986, at ¶ 11, discretionary appeal allowed, (2003),98 Ohio St.3d 1563.
 {¶ 13} The Federal policy gives "you" and "family member" the same meaning throughout the policy. Thus, the term "you" includes employees of the corporate insured and the term "family member" includes those persons listed in the definitional section of the policy wherever these terms appear in the Federal policy. See Niese, 2002-Ohio-6986, at ¶ 12, citing, Shaw v. State Farm Ins. Co., 8th Dist. No. 80471,2002-Ohio-5330, at ¶ 35, discretionary appeal allowed, (2003),98 Ohio St.3d 1474; United Ohio Co. v. Bird (May 18, 2001), 5th Dist. No. 00-CA-31, 2001 WL 575172 (finding "Since the Ohio Supreme Court has judicially defined the word, unless the policy of insurance provides a different definition under * * * [another] provision of the policy, we must apply the definition of `you' consistently throughout the policy"). Consequently, we find that Ronald Young, as a family member of an employee of Fifth/Third, fits within the definition of "family member" under the Federal policy for both inclusion and exclusion purposes.
 {¶ 14} Moreover, as Ronald was driving an auto owned by him, in order for him to avoid the "other-owned vehicle" exclusion under R.C.3937.18(J)(1) and the Federal policy, the vehicle involved in the accident must have been a "covered auto." As previously noted, the policy defined "covered auto" as one that is in the declaration for which a premium is paid. In this case, Ronald was driving a motorcycle and the declaration does not list any motorcycles. Consequently, Ronald was not driving a covered auto. As Ronald was a family member of a company employee and was driving his own motor vehicle at the time of the accident, which was not a covered auto, the policy exclusion applies to him and the Youngs are not entitled to coverage under the Federal UM/UIM policy. See Niese, 2002-Ohio-6986, at ¶ 13, citing Carmona v.Blankenship, 10th Dist. No. 02-AP-14, 2002-Ohio-5003, at ¶ 36; Jonesv. Nationwide Ins. Co. (July 23, 2001), 5th Dist. No. 2000CA00329, 2001 WL 842024; Gaines v. State Farm Mut. Auto. Ins. Co., 10th Dist. No. 01AP-947, 2002-Ohio-2087, at ¶¶ 28-29; De Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814, discretionary appeal allowed, (2002),96 Ohio St.3d 1511. Therefore, Federal was entitled to judgment as a matter of law, and the first assignment of error is overruled.
 Second Assignment of Error: The Great Northern Policy {¶ 15} The primary issue presented in this assignment of error is whether the policy of insurance issued by Great Northern to Fifth/Third at the time of Ronald Young's accident, May of 1999, was an automobile or motor vehicle liability policy of insurance. If this question is answered by this Court in the affirmative, then Great Northern was required to offer UM/UIM coverage pursuant to former R.C. 3937.18 as amended by H.B. 261, which was the law at the time Fifth/Third and Great Northern entered into the contract for insurance.[1] The parties do not dispute that UM/UIM coverage was not offered. Thus, if this policy constitutes an automobile or motor vehicle liability policy, then UM/UIM coverage, having not been offered, would arise by operation of law with limits equal to that of the liability policy. See Scott-Pontzer,85 Ohio St.3d at 665, citing Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, 568.
 {¶ 16} Great Northern provided a policy of general liability insurance to Fifth/Third, a financial institution. R.C. 3937.18, as it existed at the time of entering into the contract, required that every automobile liability or motor vehicle liability policy of insurance issued offer UM/UIM coverage to persons insured under the policy. Division (L) of this section provided, in pertinent part, that an "`automobile liability or motor vehicle liability policy of insurance' means * * * the following: (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in thepolicy of insurance[.]" Former R.C. 3937.18(L)(1) (emphasis added). Accordingly, to have constituted an automobile liability or motor vehicle liability policy of insurance herein, the policy must have served as proof of financial responsibility for specifically identified motor vehicles. In turn, R.C. 4509.01(K) defined proof of financial responsibility as: "proof of ability to respond in damages [for specified amounts] for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of ownership, maintenance, or use of a motor vehicle[.]"
 {¶ 17} Recently, this Court has had to decide the meaning of the language "motor vehicles specifically identified in the policy" used in former R.C. 3937.18(L). Reffitt v. State Auto. Mut. Ins. Co., Allen App. No. 1-02-38, 2002-Ohio-4885; see, also, Ryan v. Smith, Crawford App. No. 3-02-17, 2002-Ohio-5581. In Reffitt, following the Second and Sixth District Courts of Appeals, this Court determined that H.B. 261 significantly narrowed the scope of insurance policies that must include UM/UIM coverage as compared to the interpretation of previous versions of the statute. Reffitt, 2002-Ohio-4885, at ¶ 16. Specifically, this Court indicated that the "specifically identified" language contained in R.C. 3937.18(L)(1) requires that motor vehicles be "`precisely, particularly and individually identified in order to meet the statutory definition.'" Id., quoting Burkholder ex rel. Estate of Burkholder v.German Mut. Ins. Co., 6th Dist. No. L-01-1413, 2002-Ohio-1184, discretionary appeal allowed, (2002), 96 Ohio St.3d 1455, citing Pickettv. Ohio Farmers Ins. Co., 5th Dist. Nos. 2001CA00227, 2001CA00236,2002-Ohio-259; Jones, supra.
 {¶ 18} Great Northern's policy included the following provisions:
 This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, use, operation, loading or unloading, or entrustment to other of any: * * * auto; * * * which any insured owns, operates, rents or borrows.
 This exclusion does not apply to: * * *
 A. parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured; * * *
 E. bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph F.2. or F.3. of the definition of mobile equipment[.]
 The equipment listed in Sections F.2. and F.3. of the definition of mobile equipment are "cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers" and "air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment." In addition, the policy defines "auto" as: a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment."
 {¶ 19} In this case, no motor vehicles are listed as covered autos anywhere in the policy. Therefore, the narrow exceptions for "parking autos" and "mobile equipment," without any specifically identified vehicles, will not act to impose UM/UIM coverage by operation of law. This outcome further comports with the provisions of the Great Northern policy issued to Fifth/Third. The exclusionary language in the policy makes clear that it is not designed to provide proof of financial responsibility for any automobile, which would include Ronald Young's motorcycle as per the definition of "auto" within the policy. Moreover, the "parking auto" exception only covers parking automobiles on or next to the insured's property if those automobiles are not owned by the insured, which is not applicable to the facts here. See De Uzhca, supra;Devore v. Richmond, 6th Dist. No. WD-01-044, 2002-Ohio-3965, at ¶ 45-46; Carmona, 2002-Ohio-5003, at ¶ 55-56. In addition, "mobile equipment," as defined in the policy, refers to a limited class of equipment and vehicles not primarily designed to transport people on public roads; thus, such coverage is merely incidental and does not convert the policy to a motor vehicle liability policy requiring UM/UIM coverage to be offered. See Ryan v. Smith, 3rd Dist. No. 3-02-17,2002-Ohio-5581. As such, UM/UIM coverage did not arise by operation of law.
 {¶ 20} Other appellate districts are in accord. See Bowling v.St. Paul Fire Marine Ins. Co. (1st Dist. 2002), 149 Ohio App.3d 290,2002-Ohio-4933; Lane v. State Auto Ins. Co., 2nd Dist. No. 2002-CA-10,2002-Ohio-5128, at ¶ 21-27; Pickett, supra (5th Dist.); Devore,supra (6th Dist.); Blake v. First Financial Ins. Co., 7th Dist. No. 2002-CO-20, 2003-Ohio-1433, at ¶ 53; Ashley v. Baird, 9th Dist. No. 21364, 2003-Ohio-2711, at ¶¶ 20-28 (policy at issue contained provisions identical to the ones at issue in the case sub judice); Allenv. Transportation Ins. Co., 10th Dist. No. 02AP-49, 2002-Ohio-6449; see, also, Dolly v. Old Republic Ins. Co. (N.D.Ohio. 2002), 200 F. Supp.2d 823. Cf. Davidson v. Motorists Mut. Ins. Co., 91 Ohio St.3d 262, 267-268,2001-Ohio-36.
 {¶ 21} Even assuming that coverage arose in this case by operation of law, the Youngs would still not qualify as insureds under Great Northern's policy. The policy, while only naming Fifth Third Bancorp, a corporation, as an insured like the facts of Scott-Pontzer, specifically references employees while performing acts within the scope of their employment by the corporation. Recently, this Court held that such a provision "eliminates any ambiguity regarding coverage for employees that the term `you' may have created." Sturgill v. Motorists Ins. Group (May 12, 2003), Auglaize App. No. 2-03-01, citing Houser v. Motorists Ins.Co., 3rd Dist. No. 2-02-02, 2002-Ohio-2845, at ¶ 21. Thus, only Janet Young would be considered an insured under this policy and only while acting within the scope of her employment. The parties acknowledge that this was not the case. Thus, Great Northern was entitled to judgment as a matter of law, and the second assignment of error is overruled.
 {¶ 22} For these reasons, the judgment of the Common Pleas Court of Hancock County, Ohio, is affirmed.
Judgment affirmed.
 CUPP and FAIN, JJ., concur. MIKE FAIN, J. of the Second Appellate District, sitting by assignment.
[1] R.C. 3937.18 has since been amended to merely permit insurers to offer UM/UIM coverage to their insureds rather than compelling them to do so.